FILED
2012 SEP 26 AM 10: 05
DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

CASE NO.: 6:12cv1459-orl-18KRS

JOSEPH B. MURPHY, an individual, on behalf
of himself and all others similarly situated,

    Plaintiff,

v.                                                  **COMPLAINT - CLASS ACTION**

DCI BIOLOGICALS ORLANDO, LLC,
a Delaware limited liability company,

    Defendant.
_____/

**CLASS ACTION COMPLAINT FOR STATUTORY DAMAGES AND
INJUNCTIVE RELIEF UNDER 47 U.S.C. § 227 *et seq.*, THE TELEPHONE
CONSUMER PROTECTION ACT
JURY DEMAND**

1. "Nothing in the Constitution compels us to listen to or view any unwanted communication, whatever its merit…" *Rowan v. U.S. Post Office Dept.*, 397 U.S. 728 (1970). In order to enforce this fundamental federal right of privacy, Plaintiff files the instant class action complaint alleging violations of 47 U.S.C § 227 *et seq.*, the Telephone Consumer Protection Act ("TCPA").

**Spam** is the use of electronic messaging systems to send unsolicited bulk messages, especially advertising, indiscriminately. Email communication is hampered by the tremendous loss of time and money required to cull and remove email spam. Spam is also affecting mobile communications. Mobile technology, like e-mail, has been hijacked by bulk senders of unsolicited messages.[1] The TCPA provides a remedy to address the problems caused by senders of unauthorized text messages.

---

[1] Source: http://www.nytimes.com/2012/04/08/technology/text-message-spam-difficult-to-stop-is-a-growing-menace.html?_r=1&ref=spamelectronicmail (last accessed September 16, 2012).

Defendant has issued numerous unwanted text messages in violation of the TCPA. By effectuating these unauthorized text message calls, Defendant has caused consumers actual harm, not only because consumers were subjected to the aggravation that necessarily accompanies mobile spam, but also because consumers frequently have to pay their cell phone service providers for the receipt of such spam and the recipients of such spam incur actual damages, such as diminished cellular battery life, loss of data storage capacity, invasion of privacy, and intrusion upon seclusion.

In order to redress these injuries, Plaintiff, on behalf of himself and the proposed class of similarly situated individuals, brings this suit under the TCPA, which specifically prohibits unsolicited voice and text calls to cell phones. Defendant has caused to be published commercial advertisements in a manner which violates the right of privacy of the putative class members. On behalf of the class, Plaintiff seeks an injunction requiring Defendant to cease all such commercial text advertisements and an award of statutory damages to the class members, together with costs and reasonable attorney's fees.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this class action lawsuit under 28 U.S.C. § 1331 and 47 U.S.C. § 227. Venue in this District is proper because Plaintiff resides here and Defendant conducts business in this District. This Court also has jurisdiction over Plaintiff's individual claim pursuant to 28 U.S.C. § 1331 and 47 U.S.C. § 227.

## PARTIES

3. Plaintiff, JOSEPH B. MURPHY ("Plaintiff" or "MR. MURPHY"), is a natural person, and citizen of the State of Florida, residing in Lake County, Florida.

4. Defendant, DCI BIOLOGICALS, LLC ("Defendant"), is a company which is engaged in the business of buying and reselling blood plasma, part of a $12 billion dollar industry in the United States.[2] Defendant is a registered limited liability company in the State of Delaware, operating from offices located at 150 N.W. 6th Street, **Gainesville**, Florida 32601, with a principal address in Florida at 11601 E. Colonial Drive, Orlando, Florida 32817 and is therefore a corporate citizen of both Delaware and Florida.

## A BRIEF OVERVIEW OF TEXT MESSAGING

5. In recent years, marketers who often have felt stymied by federal laws limiting solicitation by telephone, facsimile machine, and e-mail have increasingly looked to alternative technologies through which to send bulk solicitations cheaply.

6. One of the newest types of such bulk marketing is to advertise through Short Message Services. The term "Short Message Service" or "SMS" describes a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 120 - 500 characters.

7. Similarly an "MMS message" or multimedia message service is a messaging system which allows cellular telephones to send and receive larger electronic media files, which, in addition to text messages, may include digital images or a prerecorded audio file.

---

[2] Andrew Pollack, *Is Money Tainting the Plasma Supply?* The New York Times, December 5, 2009.

8. An "SMS message" or "MMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to the device. When an SMS or MMS message call is successfully made, the targeted consumer's cell phone rings, alerting him or her that a call is being received.

9. Unlike more conventional advertisements, SMS and MMS calls, and particularly wireless or mobile spam, can actually cost their targeted consumers money, because cell phone users must frequently pay their respective wireless service providers either for each text message call they receive or incur a usage allocation deduction to their text plan, regardless of whether or not the message is authorized. Even targeted consumers with so called bulk or unlimited text plans pay for mobile text service at rates based on the demand for the text services and the costs to provide the text services. As wireless or mobile spam increases so does the consumption and demand for text services which in turn create added costs to wireless carriers. These costs are not free but eventually are passed onto and paid by the wireless consumers that pay on either per text or bulk text charge plans. Ultimately, the receipt of a text message is not free and the cost is directly or indirectly eventually borne by the consumers who purchase text services.

10. Unscrupulous marketers are continually launching SMS and/or MMS-based campaigns because industry studies reveal that text messages have open rates of more than 95% percent, compared to that of less intrusive forms of advertising such as regular mail or e-mail advertisements with average open rates ranging from of 12% percent to 22% percent.[3]

---

[3] Source: Frost & Sullivan (2010); Epsilon (2009)

11. Most commercial SMS and MMS messages are sent from "short codes" (also known as "short numbers"), which are special cellular telephone exchanges, typically only five or six digit extensions, that can be used to address SMS or MMS messages to mobile phones. Short codes are generally easier to remember and are utilized by consumers to subscribe to such services such as television program voting or more benevolent uses, such as making charitable donations.

12. A short code is sent to consumers along with the actual text message and conclusively reveals the originator of the SMS or MMS message.

13. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003).

14. Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that Plaintiff provided express consent within the meaning of the statute. *See FCC Declaratory Ruling*, 23 F.C.C.R. at 565 (¶ 10).

15. Text messages are "calls" within the context of the TCPA. *Satterfield v. Simon & Schuster*, Inc., 569 F.3d 946 (9th Cir. 2009).

16. One of the leading think tanks, Pew Research Center, recently reported that 79% percent of cellular telephone owners use text messaging; of this group, 69% percent receive unwanted text message spam, 25% percent on a weekly basis. Source: http://pewinternet.org/Reports/2012/Mobile-phone-problems/Main-findings.aspx (last accessed September 11, 2012).

## FACTUAL ALLEGATIONS SPECIFIC TO MR. MURPHY

17. Plaintiff had previously sold his blood plasma to Defendant on dates between about March 1, 2010 through on or about June 14, 2010.

18. As part of the aforesaid business transactions, Plaintiff was required to provide certain blood donor information, which included his telephone number on a document referred to hereinafter as a "New Donor Information Sheet."[4]

19. Since on or about June 14, 2010, Plaintiff has not engaged in any business whatsoever with Defendant.

20. Irrespective of any business relationship with Plaintiff having been terminated by operation of law,[5] Defendant began sending commercial text messages to Plaintiff on or about August 1, 2012; this practice is commonly referred to as "mobile spamming." Some examples of the text messages sent by Defendant and received by Plaintiff are as referenced below:

[On or about August 1, 2012 at 8:33 p.m. from short code "76000"]

```
You will receive MMS messages from DCI Biologicals
on short code 76000.  Reply STOP to 99000 to
cancel.
```

---

[4] The aforesaid document has not been attached hereto as it contains certain protected medical information pursuant to the Health Insurance Portability and Accountability Act of 1996 (HIPAA) but will be provided to Defendant after an appropriate confidential agreement is in place.

[5] While not dispositive to Counts I or II, the Telephone Consumer Protection Act provides that an "established business relationship" is terminated after a period of eighteen (18) months. *See* 47 CFR 64.1200(f)(5).

> [On or about August 1, 2012 at 9:11 p.m. from short code "76000"]
>
> We NEED U Back $20 Special!!!
>
> DCI Biologicals: DONATE TODAY! GET PAID TODAY! SAVE A LIFE TODAY! "$20 COME BACK SPECIAL"- Come back in and See Us & Get an Extra $5 on your NEXT 4 Donations!
>
> DONATE UP TO 20 MIN FASTER WITH OUR NEWLY UPGRADED MACHINES
>
> Plasma Center Hours:
> Mon. - Wed. - Fri. : 8AM - 6PM
> Tues. - Thu. : 8AM - 7PM
> Saturday: 8AM - 2PM
>
> Located at:
> 150 N.W. 6th Street
> Gainesville, FL 32601
> For Questions Call: 352-378-9204
> (Must Present Text)
> (This Offer Expires 08-31-12)
> Text STOP to 99000 to cancel.

21. The second of the above-referenced text messages attached an electronic media file commonly referred to as a "jpeg", which is essentially a digital image file that is capable of being received by most cellular telephones. A copy of the aforesaid file is attached hereto as "Exhibit A."

22. Identical text messages were sent to MR. MURPHY and the other putative class members by Defendant *en masse* using an automatic telephone dialing system, also known as an "auto-dialer"; the auto-dialer used by Defendant had the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers.

7

23. Upon information and belief, Plaintiff was involuntarily opted into Defendant's text message advertising platform by some unknown party working on behalf of Defendant.

## CLASS ACTION ALLEGATIONS

24. This action is brought on behalf of the following Class and Subclass:

### The DCI Text Message Class:

(i) all persons in the United States; (ii) who received at least one text message from Defendant or parties authorized to send text messages on behalf of Defendant; (iii) and wherein the recipients' cellular telephone was obtained from a "New Donor Information Sheet"; (v) and said text messages were sent using an automatic telephone dialing system or a device which has the capacity be used as same; (vi) from any short code, website, computer, or other electronic medium utilized by Defendant, or any other party authorized by Defendant to promote Defendant's business; (vii) without the prior express consent of the text message recipient; (viii) during the four year period prior to the filing of the complaint in this action through the date of certification.

### The DCI "Do Not Call" Subclass

(i) all persons in the United States; (ii) who within a twelve (12) month period of time (iii) received at least two text messages telemarketing calls from Defendant or parties authorized to send text messages on behalf of Defendant; (iv) and wherein a call (other than the first one) was received after 9:00 p.m. EST (v) and wherein any permissible purpose for initiating said call had terminated by operation of law; (vi) during the four year period prior to the filing of the complaint in this action through the date of certification.

The above-cited class definitions exclude all persons who were self-subscribed to Defendant's text message advertising program through previous marketing efforts. Excluded from the Class and Subclass are Defendant, their legal representatives, assigns, and successors, and any entity in which the Defendant has a controlling interest. Also excluded from the Class and Subclass are the Judge to whom this case is assigned as well as the Judge's immediate family. Plaintiff reserves the right to amend the above-stated Class and Subclass definitions based upon facts learned in discovery.

25. Plaintiff alleges on information, belief, and the exhibit attached hereto that the subject classes are so numerous that joinder of all members of the classes is impractical. There are more than forty-one (41) individuals in the Class and Subclass as previously defined herein.

26. There are questions of law or fact common to the class, which common issues predominate over any issues involving only individual class members. The common factual and/or legal issues common to each class member are as follows:

(a) Whether Defendant's conduct is governed by the TCPA?

(b) Whether the mobile spam sent by Defendant violated the TCPA?

(c) Are the class members entitled to treble damages based upon the willfulness of Defendant's conduct?

(d) Whether Defendant should be enjoined from engaging in such conduct in the future?

27. Plaintiff's claim is typical of those of the class members. All claims are based on the same facts and legal theories.

28. Plaintiff will fairly and adequately protect the interests of the class. He has retained counsel experienced in handling actions involving unlawful practices under the TCPA and class actions. Neither Plaintiff nor his counsel has any interests which might cause them not to vigorously pursue this action.

29. Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

> (1) The questions of law or fact common to the members of the class predominate over any questions affecting an individual member.
>
> (2) A class action is superior to other available methods for the fair and efficient adjudication of the controversy.

30. Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is also appropriate in that Defendant has acted on grounds generally applicable to the class thereby making appropriate relief with respect to the class as a whole.

31. MR. MURPHY requests certification of a hybrid class under Rule 23(b)(3), Federal Rules of Civil Procedure, for monetary damages and pursuant to Rule 23(b)(2) for injunctive relief.

### COUNT I
### VIOLATIONS OF THE
### TELEPHONE CONSUMER PROTECTION ACT
### (Violations of 47 U.S.C. § 227(b)(1)(A)(iii))

32. Plaintiff incorporates Paragraphs 1 through 31.

33. Defendant made unsolicited commercial text calls to potential customers (i.e. members of the Class) using an automatic telephone dialing system.

34. The calls were made without the prior express consent of the targeted consumers.

35. The aforesaid calls were made in violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff requests that the Court enter judgment in his favor and in favor of the Class, and against Defendant for:

(a) An order certifying this case to proceed as a class action;

(b) Statutory damages at $500 dollars per call for each non-willful violation of the TCPA;

(c) An injunction requiring Defendant to cease all communications in violation of the dialer prohibitions of the TCPA;

(d) Reasonable attorney's fees and costs; and

(e) Such further relief as this Court may deem appropriate.

### COUNT II
### WILLFUL VIOLATIONS OF THE
### TELEPHONE CONSUMER PROTECTION ACT
### (Willful Violations of 47 U.S.C. § 227(b)(1)(A)(iii))

36. Plaintiff incorporates Paragraphs 1 through 31.

37. Defendant made unsolicited commercial text calls to potential customers (i.e. members of the Class) using an automatic telephone dialing system.

38. The calls were made without the prior express consent of the targeted consumers.

39. The aforesaid calls were made in willful violation of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii).

**WHEREFORE**, Plaintiff requests that the Court enter judgment in his favor and in favor of the Class, and against Defendant for:

(a) An order certifying this case to proceed as a class action;

(b) Statutory damages of up to $1500 dollars per call for each willful violation of the TCPA;

(c) An injunction requiring Defendants to cease all communications in violation of the dialer prohibitions of the TCPA;

(d) Reasonable attorney's fees and costs; and

(e) Such further relief as this Court may deem appropriate.

### COUNT III
### VIOLATIONS OF THE "DO NOT CALL" PROVISIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
### (Negligent Violations of 47 U.S.C. § 227(c)(5))

40. Plaintiff incorporates Paragraphs 1 through 31.

41. Defendant made unsolicited commercial text calls to potential customers (i.e. members of the Subclass).

42. That each member of the putative class received at least two telemarketing calls from Defendant or placed on behalf of Defendant within a twelve (12) month period of time.

43. That at least one of the aforesaid telemarketing calls (other than the first one) was initiated after 9:00 p.m. EST in direct contravention of 47 CFR 64.1200(c)(1).

44. The subject telemarketing calls were not permissible under any relevant portion of the Telephone Consumer Protection Act.

45. The aforesaid calls were made in violation of the TCPA, 47 U.S.C. § 227(c)(5).

**WHEREFORE**, Plaintiff requests that the Court enter judgment in his favor and in favor of the Subclass, and against Defendant for:

(a) An order certifying this case to proceed as a class action;

(b) Statutory damages up to $500 dollars per call for violations of the "Do Not Call" provisions of the TCPA;

(c) An injunction requiring Defendant to cease all communications in violation of the "Do Not Call" provisions of the TCPA;

(d) Reasonable attorney's fees and costs; and

(e) Such further relief as this Court may deem appropriate.

## COUNT IV
## INJUNCTIVE RELIEF FOR VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
### ( Violations of 47 U.S.C. § 227(c)(5))

46. Plaintiff incorporates Paragraphs 1 through 31.

47. Defendant, and/or its agents or independent contractors have possession, custody and control of business records, databases, computer systems, and other information and equipment necessary to identify the members of the Class, including but not limited to the names, addresses, and cellular telephone numbers of the Class members. Unless immediate injunctive relief is ordered, Defendant will alter, erase, delete, destroy or otherwise dispose of and remove such systems, records and

equipment. For this reason, Plaintiff is entitled to an order prohibiting and enjoining Defendant and their agents or independent contractors from altering, deleting, destroying or otherwise disposing of any documents, records, databases or computer systems that are necessary to identify the members of the class.

48.  Defendant should be enjoined from further violations of the TCPA.

**WHEREFORE**, Plaintiff, on behalf of himself and the Class, prays for the following relief:

(a)  An order certifying the Class as defined above;

(b)  An injunction requiring Defendant to cease all communications in violation of the "Do Not Call" provisions of the TCPA

(c)  An injunction requiring Defendants to cease all communications in violation of the dialer prohibitions of the TCPA;

(d)  An injunction requiring Defendant to cease all wireless spam activities and restraining Defendant from altering, erasing, changing, deleting, destroying or otherwise removing or disposing of any documents, records, databases, computer systems and the like currently in its possession or control or in the possession or control of its agents and contractors which are used or useful in identifying all persons, corporations or other entities to whom Defendant have transmitted text message advertisements;

(d)  An order preliminarily and permanently enjoining Defendant from engaging in the practices challenged herein;

(e)  Reasonable attorneys' fees and costs; and such further and other relief this Court deems appropriate.

(f)  Such further relief as this Court may deem appropriate.

## JURY DEMAND

Plaintiff demands trial by jury.

Dated this 26th day of September 2012.

Respectfully submitted,

EDMUND A. NORMAND, ESQ.
*Attorney for Plaintiff and the putative class*
236 S. Lucerne Circle
Orlando, Florida 32801
Telephone: 407-843-7060
Facsimile: 407-843-5836
ednormand@whkpl.com

By: /s/ Edmund A. Normand
Edmund A. Normand, Esq.
Florida Bar No. 0865590

SCOTT D. OWENS, ESQ.
*Attorney for Plaintiff and the putative class*
664 E. Hallandale Beach Blvd.
Hallandale, Florida 33009
Telephone: 954-589-0588
Facsimile: 954-337-0666
scott@scottdowens.com

By: /s/ Scott D. Owens
Scott D. Owens, Esq.
Florida Bar No. 0597651

